UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

                      CASE NO. 16-cr-20414

v.                      HON. DAVID M. LAWSON

RANDY STEWART,

    Defendant.
_____/

**<u>GOVERNMENT'S MOTION TO REVOKE BOND</u>**

The government hereby moves, pursuant to Title 18, United States Code, Section 3145, to revoke defendant Randy Stewart's pretrial release in the captioned matter. Stewart has sixteen adult criminal convictions, including two previous aggravated assault convictions, and three crimes that resulted in sentences of imprisonment of a year or more. He has never successfully completed a period of court supervision, violating every release term—including the present one—by committing new crimes.

And in January, while on federal supervised release, he violently assaulted a stranger in a parking lot over a minor fender-bender that

1

didn't even involve Stewart's vehicle, putting that victim in the hospital for three days with a broken jaw and leaving him with two plates in his face. That assault, occurring around 1:00 a.m. on a Thursday in a liquor store parking lot, wasn't even Stewart's first crime during this period of supervision.

The applicable standard requires Stewart to prove by clear and convincing evidence that he will not pose a danger to any other person or to the community. This he has not done and cannot do. The release order in this case, which was predicated on the assumption that it only needed to assure the community's safety until the scheduled March 20 hearing, should be revoked.

                                    Respectfully submitted,

                                    DAWN N. ISON
                                    United States Attorney

                                    /s/ Benjamin C. Coats
                                    Assistant United States Attorney
                                    United States Attorney's Office
                                    Eastern District of Michigan
                                    211 West Fort Street, Suite 2001
                                    Detroit, MI 48226
                                    Phone: (313) 226-9734
                                    Email: Benjamin.Coats@usdoj.gov

Dated: March 19, 2023

## **BRIEF**

On March 6, 2023, Randy Stewart appeared in magistrate court on a summons issued by this Court, in response to three alleged violations of his supervised release. Following a hearing, the magistrate judge ordered him released to house arrest (with a friend in New Haven, Michigan) with a tether, observing that although the court believed he would be a danger on the streets of Detroit, these conditions would sufficiently mitigate the risk Stewart posed for the limited time until his hearing before this Court. In response to the government's expressed concern that Stewart would seek an adjournment because he had a pending state case, extending his period of release for weeks or months, his then-counsel responded with an example of this Court holding a violation hearing without waiting for a parallel state proceeding to conclude, implying that the magistrate judge's assumption that the hearing would be held as scheduled was accurate.

Stewart now seeks an adjournment of his violation hearing because he has a pending state case. If that adjournment is denied, this motion will be moot. If it is granted, his release order should be reviewed and revoked.

3

## **Standard of Review**

Under the Bail Reform Act, when a magistrate judge issues an order releasing a defendant, the government may move for revocation before the district judge assigned to the case. 18 U.S.C. § 3145(a)(1). The district judge's review is de novo. *United States v. Marcrum*, 953 F. Supp. 2d 877, 880 (W.D. Tenn. 2013). This Court "engage[s] in the same analysis, with the same options … as the magistrate judge." *See United States v. Yamini*, 91 F. Supp. 2d 1125, 1129 (S.D. Ohio 2000).

Because Stewart is alleged to have violated conditions of supervised release, his release or detention is governed by Federal Rule of Criminal Procedure 32.1, which references Section 3143(a)(1) of Title 18, United States Code, and expressly states that "[t]he burden of establishing by clear and convincing evidence that the person will not flee or pose a danger to any other person or to the community rests with the person." Fed. R. Crim. P. 32.1(a)(6). The default position of the law for defendants in Stewart's position is not release, as it is in most pretrial circumstances—it is detention.

## Nature and Circumstances of Instant Offense

On Thursday, January 12, 2023, after midnight, Randy Stewart—who had then been on supervised release for just over a year—was hanging out outside of a liquor store with a few other people. A car driven by a woman Stewart later referred to as his "fake sister" stopped and idled in the middle of the parking lot. A man (S.W.) came out of the store, got into his car, and backed out of his parking spot, apparently failing to see the idling car behind him and running into it. S.W. pulled his car forward and got out to inspect the damage, as did the driver of the other vehicle.

Stewart witnessed this minor accident and wandered into the vicinity, just off to the side of S.W. Suddenly, without any warning or exchange, he violently attacked S.W., leading with a sucker punch to the head, and following it up with several blows with his hands to S.W.'s head and body, throwing him against his (S.W.'s) car. A man Stewart had been talking with joined in, kicking S.W. repeatedly while Stewart had him on the ground. As Stewart remained astride a prostrate S.W., the driver of the other car handed him S.W.'s phone, which had fallen from S.W.'s pocket during the assault. Stewart finally

5

moved away, allowing S.W. to struggle to his feet. As he walked away, Stewart threw the phone on the pavement with considerable force. He then threatened S.W., telling him to move his car or "I'm gonna light that shit up."

S.W. was in the hospital for three days and has plates in his upper and lower jaw, due to a broken jaw suffered during this assault. An anonymous tipster told the police, in response to a social media post seeking information, that Stewart had committed the crime. S.W. picked Stewart out of a photo lineup as his assailant.

And Stewart (after some lying and obfuscation) identified himself in still photos from the surveillance video and admitted he had "fought" S.W. He admitted throwing S.W.'s phone on the ground. Stewart told the interviewing detective, "This is the hood. If a [n-word] runs into a car, I'll beat your ass." After substantial prompting, he finally admitted that he "shouldn't have hit him so hard."

Stewart is currently charged by the State of Michigan with assault with intent to rob and larceny from the person, both felonies. His state case has been bound over following a preliminary examination. S.W.'s identity is known to Stewart.

6

Though January 12 was a Thursday, Stewart was not at work nor getting rest to prepare for work at 1:00 a.m. In fact, he hadn't been employed since at least May 2022, though a condition of his bond required him to seek or maintain employment. In his February 1 interview with the Detroit police, Stewart identified himself as a drug dealer, though he tried to clarify that he meant he had been a drug dealer in the past. In any event, whatever Stewart was doing for money, it wasn't legitimate employment as required by his supervised release conditions.

One of the things Stewart needed (and apparently, still needs) money for is the fines issued after he pleaded guilty to a different set of crimes he committed while on supervised release. On June 17, 2022, he was caught driving in Eastpointe on a suspended license, with a forged temporary license plate. He was charged with a felony but eventually pleaded guilty to two misdemeanors, and he was sentenced to pay a fine of $1,025. He hasn't paid that fine, though, and has a show cause hearing scheduled for next month.

## History and Characteristics

Stewart is 31, with a tenth-grade education and a G.E.D. earned while incarcerated. He's been committing crimes his entire adult life and spent all but a few months from 2012-2022 in state and then federal custody. He has essentially never worked legitimately.

When not in jail or prison during that period, Stewart sold crack cocaine and heroin for the Polo street-level drug-trafficking organization that was at the leading edge of the current wave of fentanyl dealing, responsible for a rash of overdoses that led to the conviction and imprisonment of thirteen members of the group. By the time the federal investigation into Polo began, Stewart—one of the organization's most prolific dealers—had been caught with some of Polo's drugs, and since he was on parole, he'd been returned to MDOC custody. Since the federal case against him was a historical one, he wasn't charged with overdoses and pleaded guilty to an agreed five-year sentence, which he completed in January 2022.

Stewart's sixteen adult criminal convictions include two aggravated assaults. One, in 2012, is described in his 2017 PSR as involving Stewart assaulting a woman with a hammer. He was on

probation when he committed that crime, which resulted in a one-year sentence. It appears from his PSR that he has committed new crimes during each of his four periods of court supervision. Often, as in the current term, he has committed multiple crimes before returning to jail or prison.

## Stewart's Attempt to Meet His Burden

In response to the substantial evidence that suggests he poses a danger to other people and to the community, Stewart offered to the magistrate judge the following facts: (1) the State of Michigan had released him on house arrest with a tether in the assault case; (2) his federal Probation Officer was recommending bond; and (3) he could stay at an unnamed friend's house in New Haven.

Of course, the release/detention determination of a state judge is of no more import under the Bail Reform Act than is the similar determination of the magistrate judge. And the magistrate judge in this case rightly does not appear to have substituted that officer's judgment for his own. So the most that can be said about the first of Stewart's facts is that he's now gone around six weeks on bond without committing a new crime, as far as we are aware. But that's not much to

9

rely on. He went without reported contact with law enforcement for more than six months after his offense in Eastpointe in June 2022, until he broke a man's jaw over a slightly damaged bumper in January of this year. The rest of his adult life demonstrates a consistent reversion to criminal behavior that poses a significant danger to the community.

Similarly, the Probation Officer's recommendation, whether for bond or detention, is not a relevant factor, particularly where it is based—as it explicitly was in this case—on the state judicial officer's bond determination. And the existence of a place where Stewart can stay is not evidence that he will not pose a danger. Nearly every criminal defendant in federal court has, or at least purports to have, a place to live.

Stewart's proffer doesn't even come close to meeting his burden. He is just two months removed from violently attacking a stranger over a car accident he wasn't even part of, his third violation of his supervised release conditions. His history includes two other aggravated assault convictions and multiple additional arrests for assaultive behavior. He racked up sixteen convictions by age 31 despite spending around nine years in custody, committing new crimes during

every period of court supervision he's ever been on. Given the applicable legal standard, Stewart shouldn't have been released in the first place. He certainly shouldn't be allowed to remain out indefinitely, pending resolution of his state court proceedings.

## Conclusion

The magistrate judge's release order should be revoked.

                                        Respectfully submitted,

                                        DAWN N. ISON
                                        United States Attorney

                                        /s/ Benjamin C. Coats
                                        Assistant United States Attorney
                                        United States Attorney's Office
                                        Eastern District of Michigan
                                        211 West Fort Street, Suite 2001
                                        Detroit, MI 48226
                                        Phone: (313) 226-9734
                                        Email: Benjamin.Coats@usdoj.gov

Dated: March 19, 2023

Certificate of Service

I certify that on March 19, 2023, I electronically filed this motion for the United States with the Clerk of the United States District Court for the Eastern District of Michigan using the ECF system, which will send notification of such filing to the following:

Haralambos D. Mihas, Attorney for Defendant Randy Stewart

<u>/s/ Benjamin C. Coats</u>
Assistant United States Attorney
United States Attorney's Office
Eastern District of Michigan
211 West Fort Street, Suite 2001
Detroit, MI 48226
Phone: (313) 226-9734
Fax: (313) 226-3265
Email: Benjamin.Coats@usdoj.gov